[Cite as *Cardinal Joint Fire Dist. v. Kalan*, 2020-Ohio-3609.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## MAHONING COUNTY

CARDINAL JOINT FIRE DISTRICT ET AL.,

Plaintiffs-Appellees,

v.

FRANK KALAN ET AL.,

Defendants-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 19 MA 0051**

---

Civil Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 16-CV-2787

**BEFORE:**
David A. D'Apolito, Cheryl L. Waite, Carol Ann Robb, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. David Comstock, Jr.,* Bonezzi Switzer Polito & Hupp Co., LPA, 4137 Boardman-Canfield Road, Suite 101, Canfield, Ohio 44406, and *Atty. Mark R. Fortunado,* 3296 Stones Throw Avenue, Poland, Ohio 44514, for Plaintiffs-Appellees and

Frank Kalan, *Pro Se,* 20-1 Montgomery Drive, Canfield, Ohio 44406, Defendant-Appellant.

Dated:  June 30, 2020

—————————————

**D'Apolito, J.**

{¶1}    Pro se Appellant, Frank Kalan, appeals from the March 27, 2019 judgment of the Mahoning County Court of Common Pleas adopting a magistrate's decision determining that his property is a nuisance and ordering that it be demolished.  On appeal, Appellant asserts the trial court abused its discretion in adopting the magistrate's decision.  Appellant alleges he was denied "meaningful access to the courts" and his due process rights were violated.  Finding no reversible error, we affirm.

## FACTS AND PROCEDURAL HISTORY

{¶2}    Appellant is the owner of real property located at 514 Hickory Hollow Drive, Canfield, Mahoning County, Ohio ("property").  The property has been in disrepair for some time.  As a result, Appellees, Cardinal Joint Fire District and City of Canfield, conducted several inspections beginning in April 2013.  Photographs were taken and numerous deficiencies and ordinance violations were noted.  Following a second inspection in March 2016, Appellant was convicted in Canfield Mayor's Court with violating multiple ordinances related to the unsafe nature of his property.

{¶3}    On October 17, 2016, Appellees filed a complaint against Appellant to authorize the demolition of his property.  The complaint alleges the property is not in a habitable condition, is not able to be brought up to code, and is a nuisance.  Appellant filed an answer denying the allegations.

{¶4}    Thereafter, Appellees filed an amended complaint on August 24, 2017 against Appellant and added as a defendant the mortgagee of the property, Home Savings and Loan Company of Youngstown, Ohio ("Home Savings").[1]  The complaint specifically alleges that Appellant failed to abate the violations of City of Canfield Ordinances 1387.030, 1387.070, 1387.080, 1387.100, 1387.110, 1387.130, and 1387.180, and that he has continued to maintain his property in an unsafe manner, i.e., a nuisance under 1313.01.  The complaint sought an order for the property to be brought

———————————

[1] Home Savings is not a named party in this appeal.

Case No. 19 MA 0051

up to code within 60 days. Home Savings filed an answer admitting its interest in the property but denying the allegations.

**{¶5}** On September 26, 2017, Fire Chief Donald Hutchison filed an affidavit averring the following:

8. During the [July 2017] inspection, the following deficiencies were noted:

a. The exits, aisles, corridors and stairways were obstructed or blocked by household trash and miscellaneous items. All exit doorways were specifically blocked.

b. There were holes in the attic ceiling and scuttle covers were closed. There was water damage on every story of the home, including the ceiling and floors, making the floors flex to the point of being unsafe to walk upon.

c. There were holes present throughout the building which would permit rapid fire spread.

d. The top plate of the first floor and floor joist were rotted away allowing a direct opening into the basement just inside the front door entryway. This poses a significant hazard to anyone entering the building, including guests or firefighters.

e. Every basement window has been removed, allowing pests and animals to inhabit the building. During the inspection, a cat was observed running from the exterior [of] the home into the basement.

f. An extreme amount of miscellaneous household furnishings, trash, and used material was stacked to a height greater than the windows which would not permit an individual to escape from the home in the event of an emergency. Likewise, it would not permit the rescue of any individuals within the dwelling from the exterior by first responders.

Case No. 19 MA 0051

g. Miscellaneous waste and oily rags were found loose within the home; they were not maintained in metal containers to prevent spontaneous combustion. This pre[s]ents an immediate fire hazard.

h. The electrical panel did not have a cover. In addition, the panel is exposed to rain water which continually runs into the basement through the conduit. This condition makes it impossible for the electrical company to re-establish power to the dwelling. The electrical system must be updated and made compliant with current code.

9. * * * [Appellant] has been instructed to make repairs on numerous prior occasions, but has failed to do so. * * *

10. * * * [N]ot only has [Appellant] failed to comply with prior orders but the conditions of the house have continued to deteriorate. In Affiant's opinion, the home is in the worst condition it has been since the initiation of the inspections at the subject premises.

11. Affiant has observed no improvement or correction to any of the previously issued citations.

12. In Affiant's opinion, the home poses an immediate life and health hazard to not only occupant but to any visitor to the dwelling.

13. The conditions of the house warrant either immediate correction or demolition in order to abate the life hazards.

14. The hazards are such that this Court should order that the "Do Not Enter" signs remain in place and that only certified construction personnel be permitted to enter the premises. Furthermore, this Court should require that the property * * * remain uninhabited until all improvements are made * * *

15. Without repairs being initiated and substantially completed immediately, Affiant believes that the only reasonable alternative to protect life safety is

the demolition of the structure. Affiant would ask that this Court order the demolition of the structure if the repairs are not substantially * * * completed within 60 days.

(9/26/2017 Affidavit of Fire Chief Hutchison)

{¶6} Attached to Fire Chief Hutchison's affidavit are photographs indicating the "failed" status of the inspection and revealing the deplorable condition of Appellant's property.

{¶7} On December 15, 2017, Appellees filed a motion for summary judgment. On April 16, 2018, Appellant filed an opposition. About a week later, the trial court overruled Appellees' motion for summary judgment.

{¶8} A bench trial was held before a magistrate on July 16, 2018.

{¶9} Fire Chief Hutchison testified that Appellant's property was inspected on multiple occasions, beginning in 2013, and has a number of defects. (Plaintiffs' Exhibits 4, 6, 7, 9-11, 13-24). Appellees issued orders to Appellant to abate the defects. (Plaintiffs' Exhibits 3, 7, and 12). However, none of the violations were corrected. Fire Chief Hutchison noted several areas of the property that need to be repaired, made safe, and brought into code compliance, including the roof, electrical system, and flooring. He further noted other problem areas of the property, including accumulations of trash, open windows, and impeded means of ingress and egress. The property has no electric, gas, or heat services. The violations constitute fire, safety, and health hazards.

{¶10} City of Canfield Zoning Inspector Michael Cook also testified regarding the unsafe conditions of the property. He focused on various areas, including the roof and debris throughout the house, as well as court records of ordinance violations.

{¶11} Appellant testified he was under a guardianship imposed by the Mahoning County Probate Court when the inspections first began in 2013. All notices and reports were also sent to the guardian. The guardianship was converted to a limited guardianship in December 2015 and was later terminated by the court in May 2017. (Defendant's Exhibit A). Appellant indicated he was not currently living at his property but was instead residing in one of his automobiles. He confirmed that the roof was in bad condition and that the doorways were blocked by debris. Appellant also testified about his plans to

repair the property. Appellant indicated he has the financial and physical means to make the necessary repairs but has not done so.

{¶12} On August 7, 2018, the magistrate filed a decision determining Appellant's property to be a nuisance and ordering him to make repairs. A re-inspection of the property was ordered to be done on October 30, 2018. No objections were filed. On August 23, 2018, the trial court adopted the magistrate's decision.

{¶13} A status hearing was held before the magistrate on November 13, 2018.

{¶14} Fire Chief Hutchinson testified that on re-inspection, the roof had still not been repaired and its condition was in fact worse; the accumulation of trash throughout the house was worse; the amount of trash impeded ingress and egress; the windows remained open; and the utilities remained disconnected. Zoning Inspector Cook testified that the property was in far worse condition after the re-inspection. Photographs showing the condition of the property were admitted into evidence without objection. (Plaintiffs' Exhibit 26 A-M). Appellees' inspection report revealing the violations was also admitted without objection. (Plaintiffs' Exhibit 27).

{¶15} Appellant did not attend the re-inspection. Appellant testified he intended to make repairs on his own in July 2018 but was unable to because he hurt his back. Appellant admitted, however, that he had no documentation from a physician regarding his claimed medical condition. Appellant also stated he did not have the full amount of funds to hire a contractor. Although he had $3,000 available to buy roofing shingles, Appellant testified he did not purchase any. Appellant admitted that he failed to perform any work on his property.

{¶16} On January 2, 2019, the magistrate filed a decision again finding Appellant's property to be a nuisance and ordering that it be demolished. Appellant filed objections two weeks later. Appellees filed a reply on February 4, 2019. The trial court adopted the magistrate's decision on March 27, 2019.[2]

{¶17} Appellant filed a timely pro se notice of appeal and raises two assignments of error.[3]

---

[2] The trial court noted that Appellant failed to follow the mandates of Civ.R. 53(D)(3)(b)(ii) and (iii). Nevertheless, the court reviewed the magistrate's decision and found no error of law or other defect.

[3] The trial court granted Appellant's motion for stay.

## ASSIGNMENT OF ERROR NO. 1

**THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT 1) ACCEPTED THE DECISION OF THE MAGISTRATE AND FOUND FOR THE PLAINTIFFS WHEN THE PROCEEDINGS BELOW FAILED TO PROVIDE THE DEFENDANT/APPELLANT HIS CONSTITUTIONALLY REQUIRED, MEANINGFUL ACCESS TO THE COURTS.**

## ASSIGNMENT OF ERROR NO. 2

**THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT FAILED TO APPLY THE LAW AND EQUITY TO THE PARTICULAR FACTS OF THE CASE SUB JUDICE AND IN SO DOING, DENIED THE DEFENDANT/APPELLANT HIS CONSTITUTIONAL RIGHT TO DUE PROCESS OF LAW.**

{¶18} In his brief, Appellant sets forth both assignments of error in a combined fashion. Thus, for ease of discussion and because his assignments are interrelated, we will also consider them together.

{¶19} "An appellate court reviews the trial court's adoption of a magistrate's decision under an abuse of discretion standard. *Proctor v. Proctor*, 48 Ohio App.3d 55, 548 N.E.2d 287 (3d Dist.1988). The trial court's determination will only be reversed where it appears the trial court's action was unreasonable or arbitrary. *Id.*" *Kurilla v. Basista Holdings, LLC*, 7th Dist. Mahoning No. 16 MA 0101, 2017-Ohio-9370, ¶ 17.

{¶20} Appellant first maintains the trial court erred in adopting the magistrate's decision because he was denied "meaningful access to the courts." The record, however, does not support Appellant's contention.

{¶21} Appellant blames his prior guardian alleging that she had depleted all of his funds and then "bolted" from the proceedings. (11/27/2019 Appellant's Brief p. 5). Thus, Appellant asserts that because he lacked the monetary funds, he was unable to make the necessary repairs to his property. At the July 16, 2018 bench trial, however, Appellant indicated that he in fact did have the financial and physical means to make the necessary

repairs but had still not done so. The trial court granted him more time and scheduled a re-inspection of the property to take place on October 30, 2018.

**{¶22}** The re-inspection revealed that Appellant still made no repairs and his property was actually in worse condition. At the November 13, 2018 status hearing, Appellant claimed he had a back injury. Appellant admitted, however, that he had no documentation from a physician regarding his claimed medical condition. Appellant also admitted that he failed to perform any work on his property. Appellant presented no evidence that he bought any necessary supplies or entered into any construction contracts in order to remedy the violations.

**{¶23}** The record further establishes that Appellees and the trial court took Appellant's prior situation into account and addressed his issues. The court considered Appellant's prior guardianship, his monetary and personal injury claims, and the fact that he made no efforts to remedy his nuisance property. Appellant's assertion that he was denied "meaningful access to the courts" is unfounded.

**{¶24}** Appellant also maintains the trial court erred in determining his property is a nuisance and issuing an order of demolition, thereby violating his due process rights.

> [T]he due-process rights provided by the Fourteenth Amendment and those provided by Article I, Section 16 of the Ohio Constitution are coextensive. *Direct Plumbing Supply Co. v. Dayton,* 138 Ohio St. 540, 544-545, 38 N.E.2d 70 (1941). The fundamental requisites of due process of law in any proceeding are notice and the opportunity to be heard. *Armstrong v. Manzo,* 380 U.S. 545, 550, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965), quoting *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

*In re B.C.*, 141 Ohio St.3d 55, 2014-Ohio-4558, ¶ 17.

**{¶25}** City of Canfield Ordinance 1313.01 defines "nuisance" as:

> All buildings or structures which are structurally unsafe or not provided with adequate egress, or which constitute a fire hazard, or are otherwise dangerous to human life or which in relation to existing use constitute a

hazard to health by reason of inadequate maintenance, dilapidation, or obsolescence, are, for purposes of this chapter, "unsafe buildings." All such unsafe buildings are declared to be public nuisances and shall be abated by repair and rehabilitation or by demolition in accordance with the procedure of this chapter.

{¶26} Ordinance 1313.02 states in part:

The Fire Chief shall examine or cause to be examined every building or structure or portion thereof reported as or believed to be an unsafe building as defined in Section 1313.01 and shall give written notice to the owner or owners of record * * *. Written notice shall specifically state the defects that cause the building to be unsafe and shall state that the work shall commence within thirty days and be continued either to complete the specified repairs or improvements or to demolish and remove the building or structure or portion thereof, leaving the premises in a clean, safe and sanitary condition, subject to the approval of the Fire Chief[.]

{¶27} Ordinance 1313.03 provides in part: "Proper service of such notices shall be by personal service, residence service or by registered mail * * * [.]"

{¶28} Ordinance 1313.06 states in part:

In case the owner of record or the purchaser under a land contract shall fail, neglect or refuse to comply with the notice to repair, rehabilitate or demolish and remove such building or structure or portion thereof, such party shall be subject to penal provisions herein and the Fire Chief shall proceed to have the building or structure or portion thereof demolished and removed from the premises, leaving the premises in a clean, safe and sanitary condition * * *[.]

{¶29} The record before us, including the inspection reports and testimony of Fire Chief Hutchison and Zoning Inspector Cook, support the finding that Appellant's property is a nuisance, i.e., "structurally unsafe," "not provided with adequate egress," "constitute

Case No. 19 MA 0051

a fire hazard," "dangerous," and "hazard to health." *See* Ordinance 1313.01. The record shows that Appellees complied with all of the notice requirements, beginning in 2013, and gave Appellant ample periods of time, including additional time, to make and complete the necessary repairs in order to avoid an order of demolition. *See* Ordinance 1313.02, 1313.03 and 1313.06.

**{¶30}** In addition to the notices, Appellant was also provided an opportunity to be involved in the litigation due to the filing of Appellees' complaint in 2016, and amended complaint in 2017. Appellant was represented by counsel and participated in all aspects of the litigation, including testifying at both the bench trial and status hearing in 2018, as well as filing objections to the magistrate's decision.

**{¶31}** Accordingly, the record does not support Appellant's argument that his due process rights were violated as he was given notice and an opportunity to be heard prior to the trial court's order to have his property demolished for violating the requisite Canfield Ordinances. *See In re B.C.*, *supra,* at ¶ 17.

**{¶32}** Appellant's first and second assignments of error are without merit.

## CONCLUSION

**{¶33}** For the foregoing reasons, Appellant's assignments of error are not well-taken. The judgment of the Mahoning County Court of Common Pleas adopting the magistrate's decision determining that Appellant's property is a nuisance and ordering that it be demolished is affirmed.

Waite, P.J., concurs.

Robb, J., concurs.

Case No. 19 MA 0051

_____

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Mahoning County, Ohio, is affirmed.  Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure.  It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**